IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | In Proceedings Under |
| | ) | Chapter 7 |
| MEADOWBROOK FARMS COOPERATIVE, | ) | |
| | ) | BK 09-30688 |
| DEBTOR. | ) | |

### ORDER APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

This matter is before the Court upon the Notice of Trustee's Intent to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f) (the "Notice of Sale").[1] No objections to the Notice of Sale having been filed and no competing Qualified Bids having been made, this Court finds as follows:

### FINDINGS OF FACT

A.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law are actually findings of fact, they are adopted as such.

B.      On March 21, 2009 (the "Petition Date"), Meadowbrook Farms Cooperative (the "Debtor"), filed a voluntary case under Chapter 7 of Title 11 of the United States Code.

C.      Laura Grandy is the duly appointed and validly serving Chapter 7 Trustee (the "Trustee") for the Debtor and its Bankruptcy Estate.

D.      The Debtor was a farmer-owned cooperative that owned and operated a slaughter house and hog processing plant in Rantoul, Champaign County, Illinois (the "Hog Processing Facility").

---

[1] All capitalized terms not otherwise defined in this Order shall have the same meaning as in the Notice of Sale.

E.      The Hog Processing Facility consists of (1) real estate and improvements located in Champaign County, as more particularly described in Exhibit A hereto; and (2) various items of furniture, fixtures and equipment used in connection with the hog processing operations, including machinery, general plant equipment, office furniture and fixtures, office machines and devices, data processing equipment, laboratory equipment and telephone systems located on the Real Property (the "Assets").

F.      Before the Petition Date, the Debtor entered into various agreements related to loans from Stearns Bank, N.A. (the "Bank").  As of the Petition Date, the amount due from the Debtor to the Bank was $14,649,753.61 (the "Indebtedness").

G.      To secure the Indebtedness, the Debtor granted the Bank a mortgage lien pursuant to a Mortgage, an interest in all of its Personal Property pursuant to a Security Agreement, and UCC Financing Statements, as further described in the Notice of Sale.

H.      On or about July 10, 2009, the Trustee filed the Notice of Sale, in which she stated her intent to sell the Debtor's Assets pursuant to 11 U.S.C. § 363(f).

I.      The Trustee served the Notice of Sale on all parties on the creditors' matrix.

J.      Pursuant to the terms of the Notice of Sale, the Bank offered to purchase the Assets for the Credit Bid of $14,862,536.78, pursuant to 11 U.S.C. § 363(k).

K.      The Notice of Sale included procedures by which interested parties could submit bids for the Assets, and fixed October 23, 2009 at 5:00 p.m. Central Time as the deadline for filing Qualified Bids.  The Notice of Sale provided that if no Qualified Bids other than the Bank's Offer were submitted, the Trustee would seek approval of the Bank's Offer and Credit Bid at the Sale Hearing.

L.     The Auction, if any, and Sale Hearing were originally scheduled for October 30, 2009, but the date was continued by this Court to November 9, 2009 at 9:00 a.m.

M.     Any objections to the allowance of the section 363(f) sale, the bidding procedures, or the treatment of claims set forth in the Notice of Sale were required to be filed on or before August 2, 2009.  No objections were filed.

N.     On or about August 5, 2009, the Trustee engaged the services of Leonard Davis of Harry Davis and Company ("Harry Davis") as broker to market the Hog Processing Facility.

O.     Harry Davis conducted a marketing campaign for the Hog Processing Facility.  In particular, Harry Davis posted the Hog Processing Facility on its website and fielded inquiries, both national and international, regarding the facility or specific items of equipment.  Harry Davis also provided on-site plant inspections to interested parties.

P.     Despite the efforts of Harry Davis, no competing Qualified Bids were made by the bidding deadline.  Therefore, the Bank's Offer constituted the highest and best bid for the Assets.

Q.     As a credit bid purchaser pursuant to the Mortgage, the Bank is not liable for real estate transfer taxes under Article 31 of the Illinois Property Tax Code attributable to the Real Estate Collateral.

R.     The Trustee has demonstrated that sale of the Assets is in the best interests of the Debtor, the Bankruptcy Estate, and the creditors.  The Trustee has further demonstrated that the sale price and process was fair and reasonable, as evidenced by the bidding procedures and the market exposure of the Assets.

S.     The Notice of Sale provided that if the Bank were the successful bidder, it would compensate the Trustee for (1) actual and necessary Marketing Expenses incurred by the Trustee,

so long as the Trustee obtained the Bank's prior written consent for the expenses; and (2)

attorneys' fees in an amount not to exceed $5,000.00.

## CONCLUSIONS OF LAW

1.      This Court has jurisdiction over this matter under 28 U.S.C. § § 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(N).

2.      Due and adequate notice of the Notice of Sale was given within the meaning of

Section 363(b) of the Bankruptcy Code.

3.      The Trustee has satisfied all requirements for the sale of assets under Sections

363(b) and (f) of the Bankruptcy Code.

4.      The sale of the Assets to the Bank is made in good faith pursuant to 11 U.S.C. §

363(m), and the Bank is entitled to the protections afforded a purchaser in good faith.  There

have not been and are not any violations of Section 363(n) of the Bankruptcy Code as a result of

the approval of the sale of the Assets to the Bank.

## ORDER

IT IS HEREBY ORDERED that the sale of the Assets to Stearns Bank, N.A. pursuant to

its Credit Bid of $14,862,536.78 is approved.

IT IS FURTHER ORDERED that the Trustee is hereby authorized and directed under the

terms of the Notice of Sale and Sections 105(a) and 363 of the Bankruptcy Code to complete the

Closing within thirty (30) days following entry of this Order.

IT IS FURTHER ORDERED the Trustee is hereby authorized and directed to take any

and all actions necessary or appropriate to:

(i)      execute, perform, consummate, and close the sale to the Bank of the

Assets, together with all instruments, documents, and agreements that are reasonably

SLD-1543714-3

4

necessary to implement the sale, including a recordable trustee's deed and bill of sale; and

      (ii)     to take all further actions as may reasonably be requested by the Bank for the purpose of assigning, transferring, granting, conveying and conferring to the Bank or reducing to possession, any or all of the Assets to the Bank.

IT IS FURTHER ORDERED the transfer of the Assets to the Bank shall constitute a legal, valid, and effective transfer of the Assets, and vests or will vest the Bank with all right, title, and interest of the Debtors in and good and marketable title to the Assets free and clear of all Adverse Claims, as defined below.

IT IS FURTHER ORDERED that, except as expressly provided for in this Order, the sale of the Assets to the Bank shall be, and hereby is, free and clear of any and all mortgages, pledges, liens, claims, rights, interests, charges, security interests, conditional and installment sale agreements, and encumbrances whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise held by any claimants, including without limitation, all liabilities, debts, claims, liens, pledges, offsets, setoffs, recoupments and charges, employment-related claims, payroll taxes and successor, product, environmental, tax and other liabilities (the "Adverse Claims"); except that the sale is not free and clear of the following encumbrances:

      (a)  General real estate taxes for the years 2008 and 2009, not yet due and payable for Ludlow Township;

      (b)  Any Village of Rantoul storm water drainage taxes that are billed separately from the County real estate taxes;

      (c)  Covenants and restrictions set forth in the owner certificate attached to the recorded plat of Engels's Subdivision;

      (d)  Ordinance No. 1254, adding additional territory to Enterprise Zone No. 1 in the Village of Rantoul, Illinois, evidenced by document recorded December 5, 1989 in Book 1666 at Page 221 as document number 89R23963;

SLD-1543714-3

(e) The Easement of the Village of Rantoul, Champaign County, Illinois, its successors and assigns, for any public utility, telecommunications or cable television services and appurtenances, as contained in the Warranty Deed recorded April 17, 2002 as document number 2002R12839, over, upon and under the east, west, north and south twenty feet of the subject premises; and

(f) The Bank's liens and security interests.

IT IS FURTHER ORDERED that, unless specifically noted to the contrary in this Order, the Bank is not a successor to the Debtor or otherwise liable for any of the debts, claims against or liabilities or obligations of the Debtor, whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise, or any liabilities, debts, commitments or obligations in any way whatsoever relating to or arising from the Assets or the Debtor's operations or use of the Hog Processing Facility prior to the Closing date (collectively, the "Excluded Liabilities"), and each and every holder of any of the Excluded Liabilities hereby is permanently enjoined from commencing, continuing or otherwise pursuing or enforcing any remedy, claim, cause of action or encumbrance against the Bank, its successors or assigns or any of the Assets.

IT IS FURTHER ORDERED that on the date of the Closing each of the Debtor's creditors is directed to execute such documents and take all other actions reasonably requested by the Bank as may be necessary to release the Adverse Claims against the Assets. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Adverse Claims in the Assets shall not have delivered to the Bank prior to the Closing date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Adverse Claims reasonably requested by the Bank that the person or entity has with respect to the Assets, then (a) the Bank is hereby authorized and directed to execute and file such statements,

SLD-1543714-3

6

instruments, releases and other documents on behalf of the person or entity with respect to the Assets, and (b) the Bank is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Claims of any kind or nature whatsoever in the Assets.

IT IS FURTHER ORDERED that the Trustee is entitled to reimbursement from the Bank of $5,000.00 in attorneys' fees, and actual and necessary marketing and other expenses of $1,195.20.

IT IS FURTHER ORDERED that upon the completion of the Closing of the Sale each and every term and provision of this Order including the Findings of Fact and Conclusions of Law shall be binding in all respects upon the Bank, the Trustee, the Debtor, the Debtor's bankruptcy Estate, its creditors, all individuals or entities holding an interest in the Debtor, and all other entities and third parties, purporting to hold a lien against the Assets.

IT IS FURTHER ORDERED that this Court retains jurisdiction to:

(i)     Interpret, implement, and enforce the terms of this Order, all agreements entered into in connection therewith, all amendments thereto and any waivers and consents thereunder;

(ii)     Compel delivery of the Assets to the Bank, compel performance of all other documents, instruments, and agreements required to implement the terms of this Order;

(iii)     Adjudicate all issues concerning alleged liens and any other alleged interests in and to the Assets or the proceeds of the sale, including the extent, validity,

enforceability, priority and nature of all such alleged liens and any other alleged interests relating to the proceeds of the sale.

IT IS FURTHER ORDERED that this Order shall be effective immediately upon entry pursuant to Rule 7062 and 9014 of the Federal Rules of Bankruptcy Procedure, and, notwithstanding Federal Rules of Bankruptcy Procedure 6004(g) and 6006(d), shall not be stayed.

Counsel for the moving party shall serve a copy of this Order by mail to all interested parties who were not served electronically.

ENTERED: November 25, 2009

/s/ Gerald Fines
_____
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A to Order Approving Sale of Assets Free and Clear of Liens
Legal Description of Real Property

A part of Outlot A of Engle's Subdivision of a part of the Southwest Quarter of Section 32, Township 22 North, Range 9 East of the 3rd Principal Meridian, in Champaign County, Illinois as shown on the Subdivision Plat recorded November 20, 1989 in Plat Book BB at Page 29 as Document No. 89R22969 in the Office of the Champaign Recorder of Deeds and more particularly described as follows:

Beginning at an Iron Pin Monument found on the West line of the Southwest Quarter of Section 32, Township 22 North, Range 9 East of the 3rd Principal Meridian at the Southwest corner of Outlot A of said Engle's Subdivision, said Monument also being 40.55 feet North of the Southwest corner of said Section 32 and also being on the North right-of-way line of U.S. Route 136; thence North 00 degrees 01 minute 58 seconds East along the West line of said Southwest Quarter for a distance of 1,209.89 feet; thence South 89 degrees 59 minutes 17 seconds East for a distance of 1,447.79 feet to a point on the Northerly extension of the West right-of-way line of Turner Drive, as shown on said Plat of Engle's Subdivision; thence South 00 degrees 45 minutes 30 seconds West along the West right-of-way line of Turner Drive, and the Northerly extension thereof, for a distance of 1,210.00 feet to an Iron Pin Monument found on the North right-of-way line of said U.S. Route 136 at the Point of Intersection with said West right-of-way line of Turner Drive; thence North 89 degrees 59 minutes 17 seconds West along the North right-of-way line of said U.S. Route 136 for a distance of 1,432.47 feet to the Point of Beginning, all being situated in Champaign County, Illinois.

EXCEPT FOR THE FOLLOWING TRACTS I & II:

TRACT I:

Commencing at the Southwest corner of the Southwest 1/4 of Section 32, Township 22 North, Range 9 East of the 3rd Principal Meridian; thence North 00 degrees 01 minutes 58 seconds East along the West line of said Southwest 1/4, 40.55 feet to an iron pipe monument found at the Southwest corner of Outlot A of the aforesaid Engle's Subdivision, and on the North right-of-way line of U.S. Route 136; thence continuing North 00 degrees 01minutes 58 seconds East along the West line of said Southwest 1/4, 40.00 feet, said point being the true point of beginning; thence continuing North 00 degrees 01 minutes 58 seconds East along the West line of said Southwest 1/4 1169.89 feet; thence South 89 degrees 59 minutes 17 seconds East, 50.00 feet; thence South 00 degrees 01minutes 58 seconds West along a line parallel to the aforesaid West line of the Southwest 1/4, 1169.89 feet to a point lying 40.00 feet, normal distance measurement from the North right-of-way line of U.S. Route 136; thence North 89 degrees 59 minutes 17 seconds West parallel to said North right-of-way line of U.S. Route 136, 50.00 feet to the point of beginning, situated in Champaign County, Illinois.

TRACT II:

Commencing at the Southwest corner of the Southwest 1/4 of Section 32, Township 22 North, Range 9 East of the Third Principal Meridian; thence North 00 degrees 01 minutes 58 seconds East, along the West line of said Southwest 1/4, 40.55 feet to an iron pipe monument found at the Southwest corner of Outlot A of aforesaid Engle's Subdivision and on the North right-of-way line of U.S. Route 136, said point being the true point of beginning; thence continuing North 00 degrees 01 minutes 58 seconds East along the West line of said Southwest 1/4, 40.00 feet; thence South 89 degrees 59 minutes 17 seconds East, along a line parallel to and 40 feet North of the North right-of-way line of U.S. Route 136, 1432.97 feet to a point on the West right-of-way line of Turner Drive; thence South 00 degrees 45 minutes 30 seconds West along said right-of-way line, 40.00 feet to a point on the aforesaid North right-of-way line of U.S. Route 136; thence North 89 degrees 59 minutes 17 seconds West along said North right-of-way line of U.S. Route 136, 1432.47 feet to the point of beginning, situated in Champaign County, Illinois.