IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MEADOWBROOK FARMS COOPERATIVE, ) | Bankruptcy No. 09-30688 |
| ) | |
| Debtor. ) | |
| DANA FRAZIER, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. 09-3150 |
| ) | |
| THE CIT GROUP/BUSINESS CREDIT, INC., ) | |
| Et al., ) | |
| ) | |
| Defendant. ) | |

OPINION

This matter having come before the Court for trial on a Complaint to Determine the Validity, Priority, and Extent of Liens filed by the Chapter 7 Trustee; the Court, having heard sworn testimony, reviewed document evidence and the written arguments of the parties, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

The parties have stipulated to the core facts in this matter, and they are, in pertinent part, as follows:

    1.    Meadowbrook Farms Cooperative (Debtor) was an Illinois agricultural cooperative engaged in the business of purchasing hogs for slaughter and of processing, packaging, and selling pork products from its plant in Rantoul, Illinois.

    2.    The Debtor filed its petition for relief under Chapter 7 of the Bankruptcy Code on March 21, 2009.

    3.    The Debtor's average annual livestock purchases exceeded $500,000.

4.   Great Lakes Pork, Inc., Johnson-Pate Pork, Inc., and Lehmann Bros. Farms, LLC, (Producer-Defendants) are livestock producers engaged in the business of raising hogs and selling hogs to packers for slaughter, processing, packing, and resale.

5.   The Producer-Defendants are or were members of the Debtor.

6.   Harley Sietsema and Ed Hanenberg serve as officers or other authorized representatives of Great Lakes Pork, Inc.

7.   Bob Johnson serves as an officer or other authorized representative of Johnson-Pate Pork, Inc.

8.   Art Lehmann serves as an authorized representative of Lehmann Bros. Farms, LLC.

9.   Ed Hanenberg served as Director of the Debtor from March 26, 2008, to March 20, 2009.

10.  Bob Johnson served as Director of the Debtor until March 9, 2009.

11.  Art Lehmann served as Director of the Debtor from January 12, 2009, to March 9, 2009.

12.  The CIT Group/Business Credit, Inc. (CIT) is a creditor of the Debtor pursuant to that certain financing agreement dated November 17, 2007, as amended (CIT Financing Agreement).

13.  The CIT Financing Agreement granted CIT a security interest in certain property of the Debtor as set out in such Financing Agreement.

14.  CIT filed a UCC financing statement with the Illinois Secretary of State on November 16, 2007, referencing its security interest in the CIT collateral set out in the CIT Financing Agreement.

15.  All livestock purchased by the Debtor from the Producer-Defendants has been processed into meat or meat food products.

16.  All meat or meat food products of the Debtor has been sold by the Debtor.

17. The Debtor has no remaining inventories of livestock or meat or meat food products from any of the livestock purchased by it from the Producer-Defendants.

18. The Debtor maintained a depository bank account at Busey Bank, account No. 21510415 (Lockbox Account), which was the depository bank account for the Debtor's accounts receivable and proceeds from the sale of livestock inventory and meat and meat food products derived from livestock purchased by the Debtor from the livestock producers, including Producer-Defendants.

19. Only the Debtor's accounts receivable and proceeds from the sale of livestock inventory and meat and meat food products derived from livestock purchased by the Debtor from livestock producers, including the Producer-Defendants, were deposited in the Lockbox Account.

20. On or about July 1, 2009, the funds held in the Lockbox Account were transferred to the Trustee of the Debtor's bankruptcy estate and deposited in a Certificate of Deposit account with JPMorganChase, account No. 00312237167019.

21. As of February 26, 2010, the Trustee held in such JPMorganChase Certificate of Deposit account $2,278,745.29, representing and including only proceeds of the Lockbox Account.

22. Each of Great Lakes Pork, Inc., Johnson-Pate Pork, Inc., and Lehmann Bros. Pork, LLC, entered into one or more agreements with the Debtor regarding the terms for the sale and delivery of hogs to the Debtor and for the Debtor's payment for same.

23. Each of the Defendants has asserted a claim against the Lockbox Account proceeds.

This action was filed by the Chapter 7 Trustee requesting that the Court determine various interests of secured lenders and the Producer-Defendants in the proceeds now held by the Chapter 7 Trustee that were once held in the Debtor's Lockbox Account. The Defendants have filed various counterclaims and cross-claims, which will also be determined in this matter. At the time of trial, the only Defendants remaining were The CIT Group/Business Credit, Inc., Great Lakes

Pork, Inc., Johnson-Pate Pork, Inc., and Lehmann Bros. Farms, LLC. There is no dispute that Defendant, The CIT Group/Business Credit, Inc. has a secured interest in the funds held by the Chapter 7 Trustee, however, the Producer-Defendants contend that they have a priority interest in the funds held by the Chapter 7 Trustee by virtue of § 206(b) of the Packers and Stockyards Act of 1921, (PSA), 7 U.S.C. §§ 181, *et seq.* (2008), which requires packers, whose average annual livestock purchases exceed $500,000, to hold all livestock purchased by them in cash sales, and all inventories of, or receivables or proceeds from meat and other products derived from such livestock, in trust for the benefit of unpaid cash sellers until full payment has been received by such unpaid sellers. Thus, the issue is whether the Producer-Defendants are protected under the Packer and Stockyards Act as claimants having a priority trust interest in the proceeds held by the Chapter 7 Trustee. For the sake of clarity and brevity, the Producer-Defendants will hereinafter be referred to as PSA Claimants, that being the manner in which they were referred to during trial and in the closing arguments of the parties.

Prior to filing its Chapter 7 Petition on March 21, 2009, the Debtor was an Illinois agricultural cooperative engaged in the business of purchasing hogs for slaughter and of processing, packaging, and selling pork products from its plant in Rantoul, Illinois. As such, the Debtor was a "packer" under the PSA. Great Lakes, Johnson-Pate, and Lehmann are livestock producers engaged in the business of raising hogs and selling those hogs to packers for slaughter, processing, packing, and resale, and are members of the Debtor cooperative. As members of the Debtor cooperative, the PSA Claimants were each required to deliver and sell annually to the Debtor a specified minimum quota of hogs pursuant to the Debtor's standard form of written uniform marketing agreement. The last effective uniform marketing agreement between the Debtor and the PSA Claimants was titled "Amended Uniform Marketing Agreement Effective April 1, 2006" (Standard UMAs). These Standard UMAs, like all previous standard UMAs, set out in § 5(c) an express written waiver of the producers' "statutory trust . . . established in the

Act."  The PSA Claimants met or were meeting their 2008 annual hog quota obligations under the Standard UMAs prior to the filing of the bankruptcy petition.

In early 2008, the Debtor sought to increase hog throughput at its plant in order to replace hog deliveries lost when dozens of other members exited the cooperative.  The Debtor was experiencing severe financial difficulties as a result and attempted to induce existing members to commit to sell and deliver additional hogs to the Debtor, beyond their existing Standard UMA obligations, under a series of offer programs variously referred to as the "Treasury Stock Reissue Program" and the "Cash UMA Program" among other things.  The Debtor attempted to make these programs more and more attractive to members, including by doing away with the PSA trust waiver found in the Standard UMAs.  No members responded to these programs.  Understanding the difficulty the Debtor was having securing additional hog commitments, and not wanting to see the Debtor fail, in July or August 2008, the PSA Claimants advised James Burke, the Debtor's chief executive officer; Mr. Klene, the Debtor's executive vice president; and Roger Walk, the Debtor's Chairman of the Board, that they would be willing to consider selling additional hogs to the Debtor provided those sales were on terms that would ensure producer trust protection under the Act.  Mr. Burke and Mr. Klene confirmed to Great Lakes, Johnson-Pate, and Lehmann that these additional hog sales would not be under the Standard UMAs and that the PSA trust waiver under § 5(c) of the Standard UMA would not apply.  The PSA Claimants made it clear that they would not sell additional hogs to the Debtor unless those transactions had producer trust protections under the PSA.  Mr. Burke and Mr. Klene have testified that they understood that Great Lakes, Johnson-Pate, and Lehmann were not interested in selling additional hogs to the Debtor and would not sell additional hogs, given the Debtor's financial condition, if those transactions were not protected under the PSA's trust provisions, i.e., if these producers were required to execute a waiver of the PSA's producer trust protections.  Mr. Burke and Mr. Klene accepted those conditions in behalf of the Debtor and sought to memorialize that agreement, first in a documents titled "Cash Uniform Marketing Agreement Effective August 1, 2008" (August

Cash UMA) and later in a document titled "Cash Uniform Marketing Agreement Effective September 16, 2008 (September Cash UMA). Neither of these Cash UMA documents contained the PSA trust waiver found in the Standard UMAs and required under the PSA and its regulations, consistent with the parties' agreement.

Beginning on or about October 1, 2008, Great Lakes, Johnson-Pate, and Lehmann commenced delivering additional hogs to the Debtor on the terms agreed with Mr. Burke and Mr. Klene, namely sales on cash terms with no waiver and full retention of the producer trust protections under the PSA. Great Lakes sold a total of 11,733 additional cash hogs to the Debtor, valued at $1,320,757.72 for which it has not been paid. Johnson-Pate sold a total of 2,106 additional cash hogs to the Debtor, valued at $246,302.83, for which it has not been paid. Lehmann sold a total of 2,316 additional cash hogs to the Debtor, valued at $248,416.96, for which it has not been paid. These PSA Claimants have filed PSA trust and bonds claims with the Debtor and with the USDA/GIPSA in respect of such unpaid additional cash hogs. The USDA and GIPSA have determined that those additional hog sales are to be treated as cash sales under the PSA, are entitled to producer trust protection under the PSA, and are to be paid from the Busey Account funds which are impressed with a trust pursuant to the PSA in favor of Great Lakes, Johnson-Pate, and Lehmann.

## Conclusions of Law

The Court finds that the testimony of the representatives of the PSA Claimants was credible. It is clear that the PSA Claimants and the Debtor intended for the hog sales, consummated on and after October 1, 2008, to be cash sales, and that the PSA Claimants were to be afforded all protections under the PSA, and the federal regulations pertaining to it. The PSA Claimants could have sold their hogs to any other buyer at any time after October 1, 2008, and, with their knowledge of the financial difficulties of the Debtor, it makes no sense that the PSA Claimants would enter into a transaction with the Debtor without the protection of the PSA trust.

In arguing against trust protection for the PSA Claimants, Defendant, CIT, makes much of the fact that certain representatives of the PSA Claimants were members of the Debtor's Board of Directors, and that, as such, they were aware that the cash sale hog transactions were in contravention of CIT's financing agreement with the Debtor. The Court has carefully examined the evidence at trial and finds that Defendant, CIT, has failed to show any credible evidence that the PSA Claimants were aware of the terms of the CIT financing agreement. Representatives of the PSA Claimants which were on the Debtor's Board of Directors were volunteer directors, having very little to do with the day-to-day operations of the Debtor. The credible evidence shows that the Debtor's officers handled the day-to-day operations of the Debtor, and negotiated any financing terms with Defendant, CIT. No evidence was produced from which the Court can infer that the PSA Claimants knew of any specific terms in the financing agreement between the Defendant, CIT, and the Debtor. After a thorough review of the provisions of the PSA, in particular § 409(a) thereof and the applicable Code of Federal Regulations, the Court must find that the PSA Claimants have established that they are entitled to the trust protections afforded by § 206(b) of the PSA. See: 7 U.S.C. § 206(b) (2008). As a result, Defendant, Great Lakes, is entitled to a first priority share of the proceeds held by the Chapter 7 Trustee in the amount of $1,320,757.72. Defendant, Johnson-Pate, is entitled to a first priority share in the amount of $246,302.83. Defendant, Lehmann, is entitled to a first priority share in the amount of $248,416.96.

In addition to requesting judgment in their favor, the PSA Claimants also seek an award of pre- and post-judgment interest on their claims, together with attorney fees. In this regard, the Court has reviewed the PSA, 7 U.S.C. §§ 181, *et seq.*, and finds that the PSA does not provide for an award of interest or costs. Given that there is no express provision for interest or costs in the PSA, the Court finds that it will follow the general rule in our system that each party must pay its own attorney fees and expenses, absent express statutory provision to the contrary. See: Hensley v. Eckerhart, 461 U.S. 424 (1983).

Finally, the Court addresses the Counsel for Trustee's First Application for Approval of Compensation and Reimbursement, which was initially addressed in an order entered by the Court on December 18, 2009. Ruling on the fees requested in relation to the instant adversary proceeding was reserved until conclusion of the proceeding. Now having completed trial in this matter and having reviewed the entire record of this proceeding, the Court finds that it must deny a portion of the Counsel for Trustee's First Application for Approval of Compensation and Reimbursement which removes any funds from the proceeds in the Lockbox Account. The Court finds that the compensation sought is not reasonable, pursuant to 11 U.S.C. § 330, and that the services of the Trustee did not and could not have benefitted the Debtor's bankruptcy estate. The Court concurs with the arguments set forth in the Opposition and Response of Great Lakes Pork, Inc., Johnson-Pate Pork, Inc., and Lehmann Bros. Farms, LLC, to Counsel for Trustee's First Application for Approval of Compensation and Reimbursement and the brief in support of that opposition. As such, the Court finds that no fees shall be paid to the Chapter 7 Trustee from the funds of the Lockbox Account.

ENTERED: July __8__, 2010.

/s/Gerald D. Fines
GERALD D. FINES
United States Bankruptcy Judge